JOHN F. GAMES AND NATHAN GILBERT, PLAINTIFFS IN ERROR, *vs.*
JOHN STILES, EX DEM. OF WALTER DUNN, DECEASED, DEFEND-
ANT IN ERROR.

A deed was executed in Glasgow, Scotland, by which land in Ohio, which had been patented
    to David Buchanan by the United States, was conveyed to Walter Sterling. The deed
    recited that it was made in pursuance of a decree of the Circuit Court of the United
    States, for the District of Virginia. No exemplification of the decree was offered in evi-
    dence in support of the deed. The Court held, that as Buchanan was the patentee of
    the land, although he made the deed in pursuance of the decree of the Circuit Court of
    Virginia, the decree could add nothing to the validity of the conveyance; and therefore it
    was wholly unnecessary to prove the decree. The deed was good without the decree.
The possession of a deed, regularly executed, is prima facie evidence of its delivery. Under
    ordinary circumstances, no other evidence of the delivery of a deed than the possession
    of it, by the person claiming under it, is required.
The grantor in the deed was David Carrick Buchanan; and he declares in it that he is the
    same person who was formerly David Buchanan. The Circuit Court were required to
    charge the jury that it was necessary to convince the jury, by proofs in Court, that David
    Carrick Buchanan is the same person as the grantor named in the patent, David Bucha-
    nan; and that the statement by the grantor was no proof to establish the fact. The Cir-
    cuit Court instructed the jury that they must be satisfied from the deed and other docu-
    ments, and the circumstances of the case, that the grantor in the deed is the same person
    to whom the patent was issued; and they declared their opinion that such was the fact.
    By the Court: The principle is well established, that a Court may give their opinion on
    the evidence to the jury, being careful to distinguish between matters of law and matters
    of opinion, in regard to the fact. When a matter of law is given by the Court to the
    jury, it should be considered by the Court as conclusive; but a mere matter of opinion
    as to the facts, will only have such influence on the jury as they may think it entitled to.
The law knows of but one Christian name, and the omission or insertion of the middle
    name, or of the initial letter of that name, is immaterial; and it is competent the party
    to show that he is known as well without as with the middle name.
A deed of lands sold for taxes cannot be read in evidence, without proof that the requisites
    of the law which subjected the land to taxes had been complied with. There can be no
    class of laws more strictly local in their character, and which more directly concern real
    property, than laws imposing taxes on lands, and subjecting the lands to sale for unpaid
    taxes. They not only constitute a rule of property, but their construction by the Courts
    of the state should be followed by the Courts of the United States, with equal if not with
    greater strictness than any other class of laws.
The Supreme Court of Ohio has required a claimant under a tax title to show, before his
    title can be available, a substantial compliance with the requisites of the law.
In an action of ejectment, the defendants having entered into the consent rule, the plain-
    tiff in Ohio is not to be called upon to prove the calls of the patent under which he
    claims, on the ground of establishing the different corners. The defendants are bound to
    admit, after they have entered into the consent rule, that they are in possession of the
    premises claimed by the lessor of the plaintiff.

IN error to the Circuit Court of the United States for the District
of Ohio.

In 1836, the lessee of the defendants in error instituted an action
of ejectment against the plaintiffs in error, in the Circuit Court of
the United States for the District of Ohio, for a tract of land lying
between the Little Miami and Sciota rivers, in that part of the state
of Ohio known as the Virginia Military District, being on a survey

[Games et al. *vs.* Stiles.]

under a part of a military land warrant for one thousand acres. The cause was tried at July term, 1838, and a verdict and judgment were entered for the plaintiffs in the action, the defendant in error.

On the trial of the cause, the defendant tendered a bill of exceptions. The bill of exceptions states, that the plaintiff offered in evidence in support of his action:

First, A certified copy of a deed from David Carrick Buchanan to Walter Sterling, dated June 27th, 1825. The patent from the United States, dated 22d May, 1802, for the land in controversy, was granted to David Buchanan by the President of the United States, and the deed was executed by David Carrick Buchanan, stating that he had formerly been David Buchanan. The defendants asked the Court to instruct the jury, that the statement in the deed by the grantor, that he had formerly been David Buchanan, is no proof that he was David Carrick Buchanan. This instruction the Court refused. The deed from David Carrick Buchanan recited that the deed was executed in conformity with a decree of the Circuit Court of the United States for the Fifth Circuit, in the Virginia District, to convey the land described in it to Walter Sterling, in fee simple. The defendants excepted further to the introduction of the deed in evidence, because the proceedings of the Circuit Court of the United States in Virginia, recited in the deed, were not produced with it. But the Court overruled the objection.

Second, The defendants in their defence offered in evidence a certified copy of a paper, purporting to be a deed from William Middleton, auditor of Brown county, to John S. Wills, bearing date April 22d, 1824, for two hundred acres of land; and insisted it was duly acknowledged as such deed, and such copy was duly certified by the recorder of Brown county. The deed from William Middleton, the auditor of Brown county, recited that a sale had been made of two hundred acres of land, by William Middleton, county auditor, to John S. Wills, on the 29th December, 1823, for arrearages of taxes due to the state of Ohio, for 1821, 1822, 1823, for the lands conveyed; the land being part of the land patented to Buchanan. The deed particularly described, by metes and bounds, the tract conveyed, and granted the same to John S. Wills, in fee simple. It was duly acknowledged according to the laws of Ohio, and recorded in the proper office.

The plaintiff objected to this deed as not competent to go to the jury without evidence of the proceedings and acts of the public officers, prior, and at the sale of said land for the tax; and insisted it ought to be admitted: and the Court sustained the objection, and overruled the evidence, and declared their opinion that the same evidence should not be admitted, and the same was rejected accordingly.

The defendants then offered the same deed or copy of deed, accompanied by a duly certified copy of the record of the proceedings, at and before the sale of said land for taxes, bearing date 9th May, 1838, certified by Hezekiah Lindsey, county auditor of said county

of Brown; which copies or papers, and certificates thereon, are referred to as a part of the bill of exceptions; whereupon, the plaintiffs, by counsel, objected to the admission of the same on the ground that the same did not contain all the legal requisites to justify and authorize said sale and conveyance of said land for taxes; and of this opinion was the Court, and declared their opinion to be that the same ought not to be admitted in evidence in this case, and the same were rejected accordingly.

The defendants below gave in evidence a transcript of the record of the proceedings and decree of the Supreme Court of the state of Ohio, in a case wherein White's heirs and J. S. Wills' heirs, and H. Brush were complainants, and David Buchanan, in his lifetime, was defendant; and his unknown heirs, after his decease, were, by bill of revivor, made defendants; wherein the title to the premises in question was decreed to the complainants in that suit.

The defendants asked the Court to instruct the jury, that the record of the proceedings and decree given in evidence by defendants, may be considered by the jury as conveying the title to the land in controversy in that suit, to the complainants therein, and will, and ought to affect parties and privies, who had knowledge of the same, to prevent their taking title from the defendant therein from the time such knowledge existed. In place of this instruction, the Court instructed the jury, that to prevent Buchanan from making a good deed to those lands, it was necessary he should have notice, actual or constructive, prior to the making such deed; and of the commencement of the suit; the service of the process or the order of publication, giving such notice to appear and answer; and such publication made, to be proved: if the jury should find the deed from Buchanan to Sterling, was dated June 27th, 1825, and was at that time delivered, and the order of the Court for the publication not made until August following, as appears in the record aforesaid, it was competent for Buchanan to make such deed to Sterling; and the Court declared their opinions accordingly.

The defendant prosecuted this writ of error.

The case was argued by Mr. Mason, for the plaintiffs in error; and by Mr. Corwin, with whom was Mr. Bond, for the defendant.

The counsel for the plaintiffs in error, Mr. Mason, assigned the following reasons for the reversal of the judgment of the Circuit Court:

First, That on the trial of the cause, the Court admitted as evidence in the cause, a paper purporting to be a deed from, or signed by David Carrick Buchanan to Walter Sterling, as appears by bill of exceptions; which, for the reasons stated in the bill of exceptions should not have been admitted in evidence.

Second, There is also error in this, that the Court, on the trial aforesaid, admitted in evidence to the jury a copy of another paper,

[Games et al. *vs.* Stiles.]

purporting to be a deed from Walter Sterling to Walter Dunn; which, for the reasons stated in the bill of exceptions, ought not to have been admitted in evidence.

Third, There is also error in this, that the Court refused to admit a certified copy of a deed from William Middleton, auditor of Brown county, to John S. Wills, for two hundred acres of land, for the reasons stated in said bill of exceptions; whereas the same evidence ought to have been admitted.

Fourth, There is also error in this, that said Court refused to admit the same deed or copy accompanied by a duly certified copy of the record of the proceedings, at and before the sale of said lands for taxes, for the reasons stated in the bill of exceptions; whereas, said evidence ought to have been admitted.

Mr. Corwin, for the defendants, contended, that the proceedings of the Court in Virginia were not necessary to the validity of the deed; that a good consideration is stated in the deed, independently of that decree; that the title being in Buchanan, he had a right to convey with or without the authority of the decree.

2. That it was not necessary, that the acknowledgment should aver or recite the delivery of the deed; that possession of the deed was evidence to go to the jury of its delivery; that the recital of delivery in the deed, is evidence of that fact.

3. That the recital in the deed, showing that the grantor, David Carrick Buchanan, Esq., was the same person formerly called David Buchanan, Esq., was evidence to go to the jury of the identity of the person named in the deed and patent.

The counsel for the defendant also insisted, that it was incumbent on the party offering evidence of title growing out of a sale for non-payment of taxes, to show that the law was in all material respects complied with under which the auditor acted; that neither the deed nor the record of the auditor shows such compliance. See 18 Ohio Laws, 70.

4. That the defendants below claiming title under Brooke, through whom the lessor of plaintiff also claimed, it was not competent for them to dispute the validity of their common title.

5. That the identity of the land in question with that described in the title papers, is shown by the descriptive calls recited in the declaration, and those in the title papers of the plaintiff below, and is admitted by the consent rule.

The defendant below asked the Court to charge the jury, that the statement in the deed from Buchanan to Sterling, reciting that David Carrick Buchanan, Esq., was formerly called David Buchanan, Esq., was no evidence that it was the same person who received the patent, and conveyed to Sterling. The Court refused so to charge, and instructed the jury that they must be satisfied from the deed, other documents, and the circumstances of the case, that David Carrick Buchanan, and David Buchanan, were the same person;

Vol. XIV.—2 E

and declared their opinion, that such was the case; to which opinions the defendants excepted.

1. The defendant in error insisted, that this exception only questions the propriety of the opinion given to the jury as to the fact of identity, as arising out of the proof before them.

2. That it was proper for the Court to give such opinion, leaving the jury to decide on it for themselves. 1 Peters, 182. 190. 10 Peters, 80.

3. That the recital in the deed is evidence to be considered by the jury, with other proofs in the cause, to show the identity of the grantee of the United States with the grantor to Sterling.

Mr. Justice M'LEAN delivered the opinion of the Court.

This case is brought before this Court from the Circuit Court of Ohio, by a writ of error.

An action of ejectment was brought by Dunn against the defendants, in the Circuit Court, for the recovery of a certain tract of land; and on the trial, exceptions were taken to the rulings of the Court, which being the points decided before this Court.

The first objection taken was, that the deed offered in evidence by the plaintiff from David Carrick Buchanan to Walter Sterling, recited the proceedings and decree of a Court of the United States, for the fifth circuit, and Virginia district, &c., and no exemplification of the record of such proceedings and decree was offered in evidence, in support of the deed. Buchanan was the patentee of the land; and although he made the conveyance in pursuance of the decree, yet as the fee was in him, the decree could add nothing to the validity of the conveyance; and it was, therefore, wholly unnecessary to prove it. The deed was good without the decree, and was only referred to by the grantor to show the consideration, in part, for making it.

The defendant also objected to the admission of the deed in evidence, because "it was not duly acknowledged and proved, according to law; there being no proof of the delivery, either in the acknowledgment or other proof; except what appears on the deed, and that it was in possession of the lessor of the plaintiff."

This deed was executed at Glasgow, in Scotland, and its execution was proved by the two subscribing witnesses, who swore, "that they saw the said grantor seal as his own proper act and deed, in due form of law, acknowledge and deliver this present conveyance." This oath was administered by the Lord Provost, and chief magistrate of Glasgow, and which he duly certified, under his seal of office.

The objection did not go to the execution of the deed, but to the want of proof of the delivery.

In the conclusion of the deed, it is stated to have been signed, sealed, and delivered in presence of the subscribing witnesses, and they swear that it was delivered. But, independently of these

facts, the possession of the deed by the lessor of the plaintiff, who offers it in proof, is prima facie evidence of its delivery. Under ordinary circumstances, no other evidence of the delivery of a deed, than the possession of it by the person claiming under it, is required.

The defendant also objected to this deed, that it did not appear that the grantor, David Carrick Buchanan, was the same person named as grantee in the patent, who is called David Buchanan.

In the deed, the grantor declares, that " I, David Carrick Buchanan, formerly David Buchanan," &c.

And in connection with this objection the Court were asked to charge the jury, " that it is necessary for the plaintiff to convince them by proofs in Court, that David Carrick Buchanan is the same person as David Buchanan, named as grantee in the patent. That his statement of the fact in the deed is no proof tending to establish that fact."

The Court instructed the jury that they must be satisfied from the evidence given to them, to wit, by the deed and other documents in evidence, and the circumstances of the case, that the grantor in the deed to Sterling is the same person to whom the patent was issued; and they declared their opinions that such was the fact.

The principle is well established, that a Court may give their opinion on the evidence to the jury, being careful to distinguish between matters of law and matters of opinion in regard to the facts. When a matter of law is given by the Court to the jury, it should be considered as conclusive; but a mere matter of opinion as to the facts, will only have such influence on the jury as they may think it is entitled to.

The law knows of but one Christian name, and the omission or insertion of the middle name, or of the initial letter of that name, is immaterial; and it is competent for the party to show that he is known as well without as with the middle name. 5 Johns. Rep. 84. 12 Peters, 456.

We think there was no error in the Circuit Court, either in admitting the deed, or in their instruction to the jury on the point stated.

A deed from Sterling to Walter Dunn, the lessor of the plaintiff, for the premises in controversy, was objected to on the ground " that the delivery thereof was not proved nor acknowledged in the acknowledgment and proof thereof thereon endorsed."

This deed is not in the record, and it cannot therefore be inspected; nor can it indeed be considered in reference to the objection. But the same question is raised, it seems, on this deed as was made on the deed from Buchanan to Sterling, and the remarks of the Court on that exception would be equally applicable to this, if the deed to Dunn were in the record.

The evidence of the lessor of the plaintiff being closed, the defendants offered in evidence a certified copy of a paper purporting to be a deed from the auditor of Brown county, to John S. Wills, dated

the 22d April, 1824, for two hundred acres of land in the tract claimed by the lessor of the plaintiff; which the Court overruled, on the ground that it could not be received without proof that the requisites of the law, which subjected the land to taxation and sale, had been complied with.

The defendants then offered the same deed or copy of a deed, accompanied by a duly certified copy of the record of the proceedings, at and before the sale of said land, for taxes, dated 9th May, 1838, certified by Hezekiah Lindsey, county auditor of said county of Brown, which the Court overruled.

The laws of Ohio, imposing a tax on lands, and regulating its collection, like similar laws in, perhaps, almost all the other states, are peculiar in their provisions, having been framed under the influence of a local policy. And this policy has, to some extent, influenced the construction of those laws. There can be no class of laws more strictly local in their character, and which more directly concern real property, than these. They not only constitute a rule of property, but their construction by the Courts of the state should be followed by the Courts of the United States, with equal if not greater strictness than the construction of any other class of laws.

It will be found from the Ohio reports, that the Supreme Court has required a claimant under a tax title to show, before his title can be available, a substantial compliance with the requisites of the law. In 2 Ohio Rep. 233, the Court say, "the requisitions of the law are substantial and useful, and cannot be dispensed with. Tax sales are attended with greater sacrifices to the owners of land than any others. Purchasers at those sales seem to have but little conscience. They calculate on obtaining acres for cents, and it stands them in hand to see that the proceedings have been strictly regular."

In the case of the Lessee of Holt's Heirs *vs.* Hemphill's Heirs, 3 Ohio Rep. 232, the Court decided that a deed from a collector of taxes is not available to transfer the title, without proof that the land was listed, taxed, and advertised," &c.

The act of the 2d February, 1821, provides, that all deeds of land sold for taxes, shall convey to the purchaser all the right, title, and interest of the former proprietor, in and to the land so sold; and shall be received in all Courts as good and sufficient evidence of title in such purchaser."

Under this and similar provisions, which are found in the various tax laws up to 1824, the Courts of Ohio seem never to have held, that the deed on a tax sale is admissible as evidence of title, unaccompanied by proof that the substantial requisites of the law, in the previous steps, had been complied with. The collector, or person making the sale, was considered as acting under a special authority, and that his acts must be strictly conformable to law, to divest the title of real property, without the consent of the owner. And the purchaser at such sales is held bound to see that the requirements

[Games et al. vs. Stiles.]

of the law, which subjected the land to sale for taxes, had been strictly observed. These principles have been repeatedly sanctioned by this Court.

We will now examine the statutes under which the sale in question was made, with the view of ascertaining whether the Circuit Court erred in overruling the record of the auditor, offered in evidence to support the tax deed.

The act of the 8th February, 1820, and the act to amend the same, of the 2d February, 1821, are the laws under which the title in question was obtained.

The county auditor is required to make out from the books or lists in his office, every year, a complete duplicate of all the lands listed in his office, subject to taxation, with the taxes charged thereon. In which duplicate he shall state the proprietor's name, the number of entry, for whom originally entered, the quantity of land contained in the original entry, the county, water course, number of acres, whether first, second, or third rate land, and the amount of taxes charged thereon. These matters of description are required to be entered in separate columns, opposite the name of the proprietor. And the auditor is required to keep a book for that purpose, and to record in the form above specified, the lands entered in his county for taxation.

If the tax be not paid in the county by the 20th November, or to the state treasurer by the 31st December, in each year, the lands are to remain charged with all arrearages of taxes, and the lawful interest thereon, until the same shall be paid; to which there shall be added a penalty of twenty-five per cent. on the amount of tax charged for each year the same may have been delinquent.

The auditor of the state is required to compare the list of defalcations transmitted from each county auditor with the duplicates sent to his office from said county, for the same year; and to record in a book kept for that purpose, the delinquent lands, and charge the same with penalties and interest. And the county auditor is required, in making out the duplicate for his county, to charge each tract, in addition to the tax for the current year, with the tax, interest, and penalty of the preceding year, which shall be entered in a separate column, to be designated for that purpose on said duplicate. And when lands are returned delinquent for two years, the penalty and interest are to be charged for each year by the state auditor, who is required to transmit the same to the county auditor; and he is forbidden to enter lands a second time delinquent on the duplicate for the current year.

On receiving this list of lands, a second time delinquent, the auditor is required to advertise the same six weeks successively in a newspaper printed in the county, which advertisement shall state the amount of the tax, interest and penalties due on each tract, and the time of sale, &c. All sales are to be made by the county auditor; and on such sale being made, he is required "to make a fair

2 E 2            42

entry descriptive thereof, in a book to be provided by him for that purpose," and shall also "record in said book all the proceedings relative to the advertising, selling, and conveying said delinquent lands; which record shall be good evidence in all Courts holden within this state."

The record offered in evidence is stated to be a "record of the proceedings relative to the advertising, selling, and conveying the lands delinquent for tax, for the years 1821, 1822, and 1823, within the county of Brown, and state of Ohio."

"Be it remembered, that the following lands, as herein set forth, advertised for sale, in the names of the person to each tract annexed, were regularly entered on the duplicates for taxation, by the auditor of Brown county, for the year 1821; the tax whereon not being paid for said year, the collector of said county returned the same as delinquent therefor; whereupon the said county auditor made out and transmitted to the auditor of state, a list of said lands so returned as delinquent; and afterwards a list of said lands, with the amount of taxes, penalty, and interest charged thereon, was transmitted by the auditor of state to the county auditor of said county; whereupon a copy thereof was published three weeks in succession in a newspaper printed at Georgetown, Brown county, Ohio, in general circulation in said county; and afterwards the county auditor, in making out the duplicate for said county the succeeding year, to wit, for the year 1822, charged each tract in addition to the tax for said year 1822, with the tax, interest, and penalty of the preceding, and sent the same out a second time for collection; the tax on said land not being paid for the year 1822, they were a second time returned delinquent for the non-payment of the tax, penalty, and interest charged thereon; a list of which was again transmitted to the auditor of the state; that afterwards the said auditor of the state did transmit," &c.

This, together with the advertisement published six months before the sale of the land, is the record and only evidence offered to show that the legal requisites of the law had been complied with, previous to the sale of the land.

The first objection which arises to this paper is, that it is a mere historical statement of the facts as they occurred, and not a copy from the record.

The first important step is to show that the land was listed for taxation. On this depends the validity of the subsequent proceedings. And how is this shown by this record? It states that "the land was regularly entered on the duplicates for taxation, and sent out for collection for the year 1821," &c. Now this is a mere statement of the fact, and not an exemplification of the record.

The record of the auditor shows in what manner the land was listed for taxation, the amount of tax charged, the description of the land required by the law, and the rate at which it was entered. But the auditor in the record before us has stated that the entry or list

was regularly made, without copying the same from his records, which copy would enable the Court to determine whether the entry for taxation had been made legally. Now this is the foundation of the whole proceeding; and unless the Court will substitute the judgment of the auditor for their own, it is impossible for them to say the land was entered for taxation according to law.

Suppose the auditor had, instead of copying the advertisement on which the land was sold, merely stated that the land had been regularly advertised; could such a statement have been held sufficient? Perhaps no one acquainted with the legal requisites on this point, could hesitate in deciding that such a statement would be radically defective. That the advertisment constituted an essential part of the record, as the Court could only judge of its sufficiency by inspecting it. It would not do therefore for the auditor to withhold from his record and the Court, the advertisement, and merely say that it was regular.

Clear as this point is, it is not less so than the objection above stated. The listing of the land in conformity to law, is as essential as advertising it for sale. But in this record we have no evidence that the land was entered according to law, except the mere statement of the fact by the auditor, that it was so entered.

Is this statement evidence? The law makes the record evidence; but this statement is evidently made out, not by copying from the record, but by looking at the record, and giving in a short statement what the auditor supposed to be the fact.

Suppose it should be important in any other case to show that this land had been regularly entered for taxation in the year 1821. Would the certificate of the auditor, in general terms, that the land was regularly entered that year, be evidence? Must not the record itself be produced, or an exemplification of it; which would show how it had been entered; and enable the Court to judge of the regularity of the entry? That this would be required, seems too clear for argument; and yet in no possible case could this evidence be so important, as in the case under consideration.

If the Court are to receive the mere statement of the auditor, that the land was regularly entered, which is the first step in the proceeding, and as important as any other; to be consistent, they must receive his mere statement, as proof that the subsequent steps were taken as to the charge of penalties, and interests, and delinquencies, and that it was advertised regularly and sold. This would be a short mode of arriving at the result, and might add somewhat to the validity of the titles, in disregard, however, to the rights of the nonresident land holder.

The law requires the auditor, on receiving the list of delinquent lands from the state auditor, to give public notice by advertisement, for three weeks in succession, in some newspaper in general circulation in his county, of the amount of taxes charged, &c. Now, if this advertisement be not published, the land cannot be returned by the auditor a second time as delinquent; and if not regularly re-

turned as delinquent twice, it is not liable to be sold. And what evidence is there in the record that this notice was given. There is none, but the mere statement of the fact that such notice was given three weeks in succession, in a newspaper printed in George-town. Now, if the statement of the auditor be sufficent as to this notice, it must be held equally good as to the notice of the sale. This land was transmitted from the auditor of the state twice, charged with penalties, to the county auditor, who, by the thirty-sixth section of the act of 1820, was required to publish the same, when received, three weeks; but it seems from his record that this notice has been but once given.

And, again, there is no evidence that the penalties were charged, and the interest added, but the mere statement of the auditor. What amount was charged as penalty, and the amount of interest added, nowhere appears.

In the list published in the notice of sale, it does not appear at what rate the land was entered for taxation; and the gross sum of fifty dollars is charged, without showing of what items it was com-posed. In the case of Lafferty's Lessee *vs.* Byers, 5 Ham. 458, the plaiutiff offered in evidence an exemplified copy of the books of the county auditor, showing the listing for taxation, and the advertise-ment of the sale.

Upon the whole, we think that the Court did not err, in rejecting the paper certified by the auditor as a record. We think that this record contained no evidence that the land was regularly listed for taxation; and that it was defective in not showing that other im-portant requisites of the law had been complied with. That it is a mere historical account of the facts as they transpired, and not the record evidence of those facts, as they appear or should appear on the record.

Under the law of 1824, which makes the tax deed prima facie evidence, the Ohio Courts have not required proof to the same ex-tent in support of the deed, as before such law. But the present case does not come under this law; and it is unnecessary to go into its construction by the Ohio Courts. 5 Ohio Rep. 370.

The defendants gave in evidence a duly authorized transcript of the record, proceedings, and decree, of the Supreme Court of the state of Ohio, of a certain case, wherein White's heirs and J. S. Wills' heirs, and H. Brush, were complainants, and David Bucha-nan, deceased, in his lifetime, defendant; and his unknown heirs defendants after his death, by bill of revivor; wherein the title to the premises in question, and other lands, were decreed to complainants. And here the defendants rested their case.

The Court were asked to instruct the jury, by the defendant, that it was necessary for the plaintiff to prove the calls of his patent for the ground, by establishing the different corners, &c. But the Court refused to give the instruction as requested, and informed the jury, that, by a rule of Court, the defendants having entered into the consent rule, were bound to admit, at the trial, that they are in pos-

[Games et al. vs. Stiles.]

session of the premises claimed by the lessor of the plaintiff. And there can be no doubt that, under the rule, this decision of the Court was correct.

This was not a dispute about boundaries, but of title; and in such a case, the rule referred to is salutary, and supersedes the necessity of proving the possession of the defendant. Without this rule, it would have been incumbent on the plaintiff to prove the possession; but this could have been done by any one who had a general knowledge of the land in controversy, and who could state that the defendant was in possession.

And the Court instructed the jury, that the pendency of the suit against Buchanan and his heirs, could in no sense be held constructive notice to Sterling, in receiving the deed from Buchanan, after the commencement of the suit, unless the process had been served, or publication made, before such deed was executed.

There can be no doubt that this instruction was proper; and, upon the whole, we affirm the judgment of the Circuit Court.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Ohio, and was argued by counsel. On consideration whereof, it is ordered and adjudged by this Court, that the judgment of the said Circuit Court in this cause be, and the same is hereby, affirmed, with costs.