## ASAHEL ADAMS & another *vs.* IRA FRYE.

*If after the execution and delivery of an unattested bond, the obligee, without the* knowledge and assent of the obligor, fraudulently and with a view to some improper advantage, procures a person, who was not present at the execution of the bond, to sign his name thereto as an attesting witness, the bond is thereby avoided and the obligor discharged.

The act of an obligee in procuring a person who was not present at the execution of the bond, nor duly authorized to attest its execution, to sign his name thereto as an attesting witness, is *prima facie*, sufficient to authorize the jury to infer a fraudulent intent. But it is competent for the obligee to rebut such inference ; and if the act be shown to have been done without any fraudulent purpose, the bond will not be avoided by such alteration.

To an action of debt on bond the defendant pleaded the gen eral issue, with notice, by way of specification of defence, that he should require the plaintiffs to prove the execution of the bond. At the trial, Amos Tyler, whose name appeared on the bond as that of an attesting witness thereto, was called by the plaintiffs, and testified that he did not see the defendant sign the bond ; but that Adams, one of the plaintiffs, brought the bond to him, with the defendant's name thereon, and requested him to put his name on it as a witness : That he at first refused so to do, but told Adams, that if he would go with him to the defendant's office, which was near by, he would witness the bond, if the defendant should consent : That Adams said that he (Tyler) knew the defendant's signature ; and also said it was necessary that the bond should be witnessed : That upon being further urged, he (Tyler) put his name on the bond, knowing the signature to be in the handwriting of the defendant.

The defendant insisted that the bond was void by reason of the alteration thereof made by the attestation of Tyler ; but this objection was overruled.

The defendant then objected that there was no proof of the

delivery of the bond ; but the plaintiffs were permitted to read it to the jury. No other evidence was introduced by either party.

The jury were instructed, that the mere possession of the bond by the obligees — the signature being proved — was *primâ facie* evidence of delivery ; and that unless this evidence was rebutted by the defendant, the jury would presume that the bond was delivered. A verdict was returned for the plaintiffs. New trial to be granted, if the above ruling and instructions were incorrect

The case was argued at the last October term.

*L. Williams*, for the defendant.

*Knowles*, for the plaintiffs.

DEWEY, J    The ancient rule as to alterations of deeds, as stated in *Pigot's case*, 11 Co. 27, and in Shep. Touch. 69, was one of great strictness, holding that a material alteration, without the consent of the obligor, made either by the obligee or a stranger, would discharge the obligor ; and that even an immaterial alteration, if made by the obligee, would avoid the deed. This rule has been somewhat relaxed, and its soundness often questioned, so far as it is applicable to alterations made by a stranger without the agency of the obligee ; and also, to some extent, in relation to alterations made by the obligee himself, where they were wholly immaterial, and in no manner varied the legal effect of the contract. *Nichols* v. *Johnson*, 10 Connect 192. *Lewis* v. *Payn*, 8 Cow. 71. *Hatch* v. *Hatch*, 9 Mass. 307. *Brown* v. *Pinkham*, 18 Pick. 172. *Smith* v. *Crooker*, 5 Mass. 539.

But the general doctrine remains unshaken, that a material alteration of a deed by the obligee, without the consent of the obligor, will avoid such deed ; upon the sound principle stated by Lord Kenyon, in the case of *Master* v. *Miller*, 4 T. R. 329, that " no man shall be permitted to take the chance of committing a fraud without running any risk of losing by the event, when it is detected." If, therefore, there has been any material alteration in this bond since its execution, and this done through the agency of the plaintiffs, the defendant must be discharged of his liability upon it.

The alteration, such as it was, it is conceded was made by the procurement of one of the obligees ; and the only inquiry is, whether it was such an alteration as brings the case within the principle just stated.  The precise question is, therefore, whether the subsequent addition to a bond already executed, by the procurement of the obligee, of the name of one as an attesting witness, without the assent of the obligor, will destroy the validity of the bond.

The difficulty which has pressed upon our minds, in the present case, arises from the peculiar nature of the alteration, which is the cause of complaint by the defendant.  The terms and stipulations originally contained in the body of the bond have not been altered in substance, nor even in the letter.  The attestation, by one or more witnesses, of the due execution of a bond, is not requisite to its validity, either by common law or by statute.  It is a perfect instrument, and may be enforced in a court of law, without any such attestation.°  The change produced in the character of the instrument, by this alteration, is not one which then affects in any degree the validity or construction of the contract of the parties.  At most, it only operates upon the course of the proceeding in a trial at law, as to the nature and kind of evidence required to prove the execution of the instrument.  It may also be said, perhaps, to give some additional value to a bond, if about to be put into the market, that it has the name of an attesting witness ; as having some tendency to show that the execution of it was properly and fairly obtained, as well as that it was genuine.

I am not aware that this precise question has ever before arisen here.  The effect of an alteration, by adding the name of a witness to a promissory note, has been before this court in several cases.  In *Homer* v. *Wallis*, 11 Mass. 309, it was held, that the procuring of a person, who was not present at the making of a promissory note, afterwards to put his name thereto as a subscribing witness, was a material alteration and would avoid it.  This decision was placed upon two grounds :  1st.  That in reference to the question of the genuineness of the signature of the promisor, which was directly raised on the trial

before the jury in that case, the name of a subscribing witness would probably have some influence. 2d. That a distinction, as respects the statute of limitations being made by the law of Massachusetts, between the cases of notes having an attesting witness, and those not thus attested, it could not be considered an immaterial alteration, to cause the name of a person to be placed upon the note as a witness, who was not present at the execution thereof, and had no authority thus to attest it.

In the case of *Smith* v. *Dunham*, 8 Pick. 246, where the name of the attesting witness had been added subsequently to the execution of the note, the court, while they refused to give any effect to the attestation, in taking the case out of the statute of limitations, recognized and sanctioned another principle of some importance, in reference to the general question of the effect of such an attestation ; holding that such subsequent addition would not destroy the validity of the note, if it appeared, as it did, in that case, that there was no fraudulent intent — the attesting witness having been actually present at the execution of the note, though he placed his name upon it subsequently, and without the knowledge or assent of the promisor.

In the case of *Ford* v. *Ford*, 17 Pick. 418, it appeared that the note was, at its execution, duly attested by one witness, and subsequently some person, other than the promisee, caused another name to be placed on the note as that of an attesting witness. The question was, whether this invalidated the note ; and the court held that it did not. It is to be borne in mind, that the promisee in that case did not participate in the alteration, and that there was no allegation of fraud, on his part, in the transaction. Independent of this latter fact, this case would seem to be a strong authority to show that the addition of the name of a witness to an instrument which has no greater legal efficacy by reason of its having an attesting witness, would not vitiate the instrument. This case, however, seems to leave unsettled the question, as to the effect of such alteration, if made by the promisee, and also the further question, whether a fraudulent design in the party thus making it, must be shown by the party seeking to avoid the note.

The suggestion made by the court in the case of *Homer* v *Wallis*, cited before, (where the note was avoided,) that the name of a subscribing witness apparently borne upon the instrument would have some influence with the jury on a question of the genuineness of the handwriting of the promisor, and therefore that such alteration could not be said to be immaterial, is equally applicable to a case like the present. Then as to the second ground upon which the decision in *Homer v. Wallis* was placed, viz. the effect of the statute of limitations in its bearing upon this question, it will be perceived that the effect of such an alteration is a contingent one. It may or may not, at some fu ture day, affect the remedy upon the contract, not the contract itself. During the term of six years, the contract is in no way affected by it, except in the mode of proof of the execution of the instrument ; and in that respect the effect is the same in the case of a bond as the case of a note.

There was, by the alteration which was made in the case at bar, a material change introduced as to the nature and kind of evidence which might be relied upon to prove the facts necessary to substantiate the plaintiff's case in a court of law. By adding to the bond the name of an attesting witness, the obligee became entitled to show the due execution of the same by proving the handwriting of the supposed attesting witness, if the witness was out of the jurisdiction of the court. It is quite obvious, therefore, that a fraudulent party might, by means of such an alteration of a contract, furnish the legal proof of the due execution thereof, by honest witnesses swearing truly as to the genuineness of the handwriting of the supposed attesting witness ; and yet the attestation might be wholly unauthorized and fraud ulent. It seems to us, that we ought not to sanction a principle which would permit the holder of an obligation thus to tamper with it with entire impunity. But such would be the necessary consequence of an adjudication that the subsequent addition of the name of an attesting witness, without the privity or consent of the obligee, is not a material alteration of the instrument, and would, under no circumstances, affect its validity.

But we think that it would be too severe a rule, and one

which might operate with great hardship upon an innocent party,
to hold inflexibly that such alteration would, in all cases, dis-
charge the obligor from the performance of his contract or obli-
gation.   If an alteration, like that which was made in the present
case, can be shown to have been made honestly, if it can be
reasonably accounted for, as done under some misapprehen-
s'on or mistake, or with the supposed assent of the obligor ;
it should not operate to avoid the obligation :   But on the other
hand, if fraudulently done, and with a view to gain any improper
advantage, it is right and proper that the fraudulent party should
lose wholly the right to enforce his original contract in a court
of law.

The case of *Marshall v. Gougler*, 10 S. & R. 164, present-
ed a question of similar character.   The action was debt on a
single bill purporting to be signed by attesting witnesses, but who
in fact put their names to the paper as witnesses subsequently to
the execution of it, at the request of the obligee, who told them
that he was about to assign it to a person who would not take it
without witnesses.   The court held, that if it was done by mis-
take, the witnesses supposing they were putting their names to the
assignment, it would not avoid the instrument ; but if done to
authenticate the bill, it was rendered void by such alteration.   In
the opinion delivered by Duncan, J. the court took the broad
ground, that if the names of the witnesses were thus subsequent-
ly written upon the bond, whether there was a design to defraud
or not, and however the act might be done in innocence or igno-
rance, still this falsified authentication of the instrument would
avoid it.   This, it will be perceived, is somewhat stronger
ground than that which we have adopted in the case at bar.

The court are of opinion, that the rule of law applicable to
the case before us, may be properly stated as follows :   1. That
if the obligee of an unattested bond, after the execution and de-
livery thereof, shall, without the knowledge and assent of the
obligor, fraudulently and with a view to gain some improper ad-
vantage thereby, procure a person who was not present at the
execution of the bond, to sign his name thereto as an attesting
witness, such act will avoid the bond, and discharge the obligoi

from all liability on the same : 2. That the act of the obligee in procuring the signature of one as a witness who was not present at its execution, and not duly authorized to attest it, will, if unexplained, be *primâ facie* sufficient to authorize the jury to infer the fraudulent intent ; but that it is competent for such obligee to rebut such inference ; and if the act be shown to have been done without any fraudulent purpose, the bond will not be avoided by such alteration.

We do not perceive any good objection to the instructions to the jury, that the evidence authorized them to find that the bond was delivered. It seems to be well settled, that the possession by the obligee of a deed regularly executed is *primâ facie* evidence of its delivery. *Ward* v. *Lewis*, 4 Pick. 520. *Mills* v. *Gore*, 20 Pick. 36. *Clarke* v. *Ray*, 1 Har. & Johns. 323. *Games* v. *Stiles*, 14 Pet. 322. But, for the reasons already stated as to the alteration of the bond, the verdict must be set aside, and a new trial granted.