## HAYES *v.* UNITED STATES.

*(Circuit Court, D. Colorado. November 14, 1887.)*

1. CRIMINAL PRACTICE—INSTRUCTIONS—PROVINCE OF COURT.
    Defendant was indicted for contempt of court and corruptly obstructing the administration of justice as a juror. On the trial counsel for accused stated that this was "the first case of the kind." The court told the jury it was not the first of the kind, and that a similar case had arisen, and gave the general facts of it. *Held*, that it was not error for the court to thus disabuse the minds of the jury of an impression that they were trying an unprecedented case.

2. SAME.
    The court further said: "And he (defendant) went out and took counsel of * * * with respect to it (the verdict.) His choice of an adviser was rather unfortunate; that a man should go to a boon companion in a drinking-saloon, a bar-room loafer, to ask what the law is on a subject of that kind." *Held*, that this was not error, as the judge's reference to the witness as a "bar-room loafer" might have been justified by his appearance, and the other facts referred to appeared in the record.

3. WITNESS—CREDIBILITY—INSTRUCTIONS.

In a criminal action, where witnesses had testified as to defendant's good character, the trial judge charged: "And if you believe him guilty, let not the fact that bankers and business men have testified that he is a man of integrity, by which they mean, probably, that he pays his debts, influence your verdict, or discourage you in the discharge of your duty." *Held*, that this was a correct statement of law, and though it was a "covert fling" at the witnesses' criterions of character, it was not error.

*H. W. Hobson*, for the United States.
*Patterson & Thomas*, for defendant.

BREWER, J.  At the November term, 1886, of the district court, the plaintiff in error was convicted under an indictment for corruptly obstructing the administration of justice, and for contempt of court, and the case is now before me on a writ of error from that conviction and sentence.  The only errors alleged by counsel in their briefs are in the instructions given the jury, and those not as inaccurate statements of law, where questions of law were presented, but as improper comments upon the facts, and as improperly throwing the weight of the court's opinion in favor of the prosecution and against the defendant.

This case comes before me on a writ of error, and the same rules control me in its decision as have been announced by the supreme court in the decision of cases taken on error to it.  And it is the settled rule of that court that comments made by the trial judge upon matters of fact in his charge to the jury furnish no grounds of error.  In the early case of *Carver* v. *Jackson*, 4 Pet. 80, the supreme court, by STORY, J., laid down the rule in this language:

"That with the charge of the court to the jury upon mere matters of fact, and with its commentaries upon the weight of evidence, this court has nothing to do; observations of that nature are understood to be addressed to the jury merely for their consideration as the ultimate judges of matters of fact, and are entitled to no more weight or importance than the jury in the exercise of their own judgment choose to give them.  They neither are, nor are they understood to be, binding upon them as the true and conclusive exposition of the evidence."

This doctrine is affirmed in the case of *Magniac* v. *Thompson*, 7 Pet. 348.  See, also, the cases of *M'Lanahan* v. *Insurance Co.*, 1 Pet. 182; *Games* v. *Stiles*, 14 Pet. 322; *Mitchell* v. *Harmony*, 13 How. 115; *Reynolds* v. *U. S.*, 98 U. S. 145.  This last case is very much in point.  It was a trial in Utah for bigamy, and the court in charging the jury called upon them "to consider what are to be the consequences to the innocent victims of this delusion [the doctrine of polygamy.]  As this contest goes on, they multiply, and there are pure-minded women, and there are innocent children—innocent in a sense beyond the innocence of childhood itself.  These are to be the sufferers; and as jurors fail to do their duty, and as these cases come up in the Territory of Utah, just so do these victims multiply and spread themselves over the land,"—and this language of the court to the jury was held not improper.

In the case at bar, the defendant was charged with obstructing the ad-

ministration of justice, and the testimony tended to show that while acting as a juror, and before the close of the trial, he was in a bar-room, drinking with friends, and declaring that the verdict must be in favor of the plaintiff or there would be no verdict at all. It appeared also from the testimony that in that trial in which defendant was acting as a juror a large amount was involved, and that each side was employing detectives to watch the jurors. It is not to be wondered at under the circumstances that the learned judge who tried this case was indignant and felt called upon to impress upon the jury the seriousness of the offense charged, and their duty to give careful attention to the testimony. It is painfully true that there are some violations of law, such as tampering with the ballot-box, influencing of jurors, and matters of that kind, which to many seem trivial; they are often in common conversation laughed at when successful, and simply sneered at when a failure; but they are offenses which, although the punishment imposed by statute be not great, are of a most heinous character and affecting vitally the best interests of society. It is the duty of the trial judge, when cases of that kind are presented, to see to it that they are not laughed out of court, and that the jury are impressed with the seriousness of the accusation. It is a matter of congratulation, rather than of complaint, that there are judges whose personal weight of character, learning, and high ability are such that their earnest words compel the serious attention of jurors. More than once in his charge the learned judge told the jurors that they were triers of fact, and that they were not to be influenced by any of his comments on the testimony; so they knew just what was their province and duty; and if by his earnest words he compelled their serious attention, he did that which worked no legal wrong to the defendant, and which may prove of incalculable advantage to the public. I have felt compelled to say this, not because it was necessary for determining the questions which are properly open for my consideration, but because I believe most heartily that it is the duty of a trial judge to do everything that he can, without trespassing upon the rights of the defendant, to arrest the most serious and earnest attention of the jurors in cases of this nature.

Now, with these general remarks, let me notice specifically the parts of the charge obected to. Obviously, in the argument of counsel, either for the purpose of belittling this case, or as making an excuse for the conduct of defendant, it had been stated that this was the first case of this kind, and the trial judge commences his charge by a statement that this is not the first case, and that a case of a similar nature had arisen in Pueblo, and, without mentioning names, simply states the general facts of that case. Can it be said there was any error of law in this? It was fair to disabuse the mind of the jury of the idea that they were called upon to sustain a new proceeding, or to try a case the like of which was unknown. They need not fear to be laughed at in finding a man guilty of the offense charged, on the ground that no one had ever thought of prosecuting for such an act before.

Again, he made this reference to one of the witnesses.

"And he [Hayes] went and took counsel of * * * with respect to it. His choice of an adviser was rather unfortunate; that a man should go to a boon companion in a drinking-saloon, a bar-room loafer, to ask what the law is on a subject of that kind."

Counsel truly say that there is nothing in the record which perhaps justifies such an exaggerated characterization of this witness; and yet that defendant and witness met in a saloon where they were drinking together is disclosed by the record, and it may well be that the appearance of the witness on the stand fully disclosed his character as a mere bar-room loafer. There is certainly nothing in the record to contradict it.

Again, it appears in the testimony that some of the witnesses testified to defendant's previous good character, and upon this the court charged in these words:

"And if you believe him guilty, let not the fact that bankers and business men have testified that he is a man of integrity, by which they mean, probably, that he pays his debts, influence your verdict, or discourage you in the discharge of your duty."

That is unquestionably correct as a matter of law; if the jury believe the defendant guilty, no previous good character, however proved, would be any excuse for acquitting him. And if it be said that there is a covert fling at the witnesses' criterion of a man's integrity and character, that does not change the correctness of the rule of law laid down.

These are the only special matters of the charge presented. I have mentioned them in order that my silence might not carry an implication that, though not properly cognizable on a proceeding in error, they constituted an improper attempt to influence the verdict of the jury. I think, reading the charge as a whole, any one would feel that all that the court did in his comments upon matters of fact was to endeavor to impress upon the jury the seriousness of the offense charged, and to prevent them from being misled as to their duty by matters extrinsic to the question of guilt.

There being no error apparent in the record, the judgment of the district court will be affirmed. The statute gives to this court the power of modifying the sentence imposed. As the jury recommended to mercy, I see no reason to doubt the propriety of the sentence, and the same sentence will be imposed here as in the district court.