### COTTON v. DACEY et al.

#### (Circuit Court, D. Kansas, Second Division. May 16, 1894.)

1. PRINCIPAL AND AGENT—FRAUD—MORTGAGE SUBROGATION.

One who intrusts money to an agent to be invested in land, and whose agent fraudulently used the money to pay off a mortgage on certain land belonging to a corporation organized by the agent, may, on discovering the fraud, be subrogated to the rights of the mortgagee.

2. LIS PENDENS—ATTACHMENT.

One who attaches land after a bill to establish an equitable interest in the land has been filed, but before service of process in such suit has been made on him, and who does not obtain judgment in his action until such service has been made, does not acquire, by his action, any rights in the land superior to the equities set up in the bill.

3. SAME—AMENDMENT.

The fact that, after a sale of the land under the attachment judgment, a demurrer to the bill is sustained, with leave to amend, does not subordinate the equities set up in the bill to the lien of such judgment, where the bill is subsequently amended, since the amendment relates back to the institution of the suit.

In Equity.

Suit by Henry E. Cotton against W. G. Dacey and others.

Edwin White Moore, for complainant.

Bentley & Hatfield and Ira E. Lloyd, for defendants.

WILLIAMS, District Judge. It appears from the pleadings and testimony in this case that one of the defendants, Phipps, went from the state of Kansas east, for the purpose of procuring money to be invested in real estate in the vicinity of Ellsworth and Wichita, Kan., representing that said lands were exceedingly valuable, could be platted into town lots and blocks, and would return a large profit upon the investment to be made; that he, or the parties with whom he was connected, had options on said lands; that he obtained from the plaintiff and one Babcock the sum of $7,750, to be invested in such lands, representing to them that other citizens of adjacent cities were about to make similar investments, and that, with the money thus furnished, the plaintiff and Babcock and two

other persons mentioned by him were each to have a fourth interest in the lands, and that parties in Kansas were to have the other fourth interest. Phipps returned to Kansas with the money, and instead of investing it in lands, as contemplated by the agreement with the plaintiff and Babcock, he entered into an arrangement with the Daceys, who are defendants herein, and inaugurated a joint-stock company or corporation known as the Ellsworth Midland Investment Company, the capital stock of which was $200,000, Phipps receiving 300 shares, representing $30,000. No land whatever was purchased by Phipps with the money thus intrusted to him by the plaintiff and Babcock, but the Daceys had, prior to that time, purchased 272½ acres of land, paying therefor in cash $5,250, and executing a mortgage upon it for the sum of $8,000. This, by the arrangement between Phipps and the Daceys, constituted the capital stock of the Ellsworth Midland Investment Company, of which Phipps had, as shown, 300 shares, and the Daceys and their coadjutors the remaining 170 shares. The money of the plaintiff was used to pay off the mortgages upon a portion of the lands to which the Daceys have title, unless the same has been merged into the Ellsworth Midland Investment Company. The plaintiff repudiates the transaction between Phipps and the Daceys, and charges that it was a conspiracy from the beginning between Phipps and the Daceys to swindle him out of his money, and he asks that he be subrogated to the rights of the mortgagees in the lands upon which the mortgage existed which his money paid off, and asks that the lands be now decreed to be sold, to reimburse him for the money out of which he has been wrongfully deprived.

I think a statement of the case is sufficient to show, without further evidence, that there was collusion between Phipps and the Daceys in the entire transaction, and that a fraud has been perpetrated by them upon the plaintiff in this action, and that, as between the plaintiff and the Daceys and Phipps, they are entitled to the relief asked for. I am aware that there are authorities without number that, where a volunteer pays off a mortgage, he cannot be subrogated to the rights of the mortgagees, but where a fraud has been practiced upon him, and his money fraudulently used by connivance with his agent, or the one intrusted by him with his money, and the mortgagor, then a court of equity certainly should grant him the relief asked for, to be subrogated to the rights of the original mortgagee. Phipps had not a right to do anything with the money intrusted to him but to invest it in lands. That was the contract; that was the understanding; and no hint was conveyed to the plaintiff that his money thus obtained from him was to be thrust into the maw of a Kansas corporation organized as this was, he to receive such an insignificant share of the stock as to render him entirely helpless, and without any voice in the management of the corporation or company. When we consider the original cost of the lands,—$13,000,—and that the plaintiff furnished, in order to pay off the mortgages upon it, the sum of $7,750, it would seem that anything like a fair consideration of his rights would have induced the parties forming the Ellsworth Midland In-

vestment Company to have given him shares of the stock commensurate with the money that was invested. But, though he furnished more than half of the money, he received less than one-sixth of the stock, and that, too, under a distinct contract that his money was to be invested in lands. In view of the fraud thus apparently perpetrated upon the plaintiff, so far as the rights of the Daceys and Phipps are concerned, he should be and is clearly entitled to be subrogated to the rights of the original mortgagee.

But it is contended that one Evans, who is made a defendant herein, has rights superior to the rights of the plaintiff, because he has obtained, in the district court of the county where the land was situated, a judgment against the Daceys, the original owners of the land, and by virtue of said judgment and attachment proceedings his rights are superior to the rights of the plaintiff herein. His claim is based upon a fee or commission to be paid him for the purchase of the lands in controversy, and his original claim was in the sum of $1,472.15 for commissions, amounting to $5 per acre for the purchase of the land. The court may say in passing that such commissions are at least quite liberal, and seem to be acquiesced in by the Daceys, whether they were contracted for or not. The suit of Evans was instituted in said court after the filing of the original petition in this suit in the circuit court of the United States for the district of Kansas, second division. But it is claimed that, because no subpoena was issued until after the proceedings by attachment were instituted under the Evans suit, and because he was diligent and pursued his suit to judgment, and a sale was had of the property, his rights are superior to the rights of the plaintiff in this action; and the court is referred to numerous authorities in the state of Kansas which counsel insist shall regulate the course of procedure in this court. While due deference is paid to the decisions of the state courts of the state in which the courts of the United States are held in common-law proceedings, yet the courts of the United States refuse to be governed in equity proceedings by any statute law or the decision of any state court thereunder. This admits of no question, and the inquiry here is, was the institution of this suit in the circuit court of the United States sufficient notice to Evans, as provided for by the rules of said courts, or to all parties claiming any interest in the lands in this action? It is true, as contended by counsel for Evans, that a suit is not so pending as to operate as constructive notice until the process has been served or publication made. Games v. Stiles, 14 Pet. 326. And the writ in this case was not served until after Evans had instituted attachment proceedings against the land, although the bill had been filed February 5, 1892, and service had on the defendants other than Evans on July 5, 1892, and on C. J. & J. M. Evans on October 6, 1892, which was prior to final judgment in the district court of the state in favor of Evans. So the suit in this court was constructive notice to all the parties who now set up any equities in the lands sought to be subjected to the claim of plaintiff in this case, prior to the rendition of the judgment under which they purchased; and they cannot be held as innocent purchasers, for, up to

the time of the service of process in this case, they had done nothing by which they were within the definition of an innocent purchaser, which is that he is one who, at the time of his purchase, advances some new consideration, surrenders some security, or does some other act which leaves him in a worse position should his purchase be set aside. Perry, Trusts, par. 239. The attachment proceedings instituted by Evans did not affect the rights of plaintiff, or render his rights any greater as against the plaintiff. It must be borne in mind that the rights of the plaintiff grew out of the fact that, by the fraud and conspiracy between Phipps and Dacey, by which the money of plaintiff was used to redeem the lands in controversy from the mortgages, a trust is established in favor of the plaintiff in the lands which a court of equity will favor and enforce. This was the condition when Evans' attachment proceedings were instituted, and they did not terminate the trust, nor deprive him of the benefits or protection accruing to him thereunder. The equities of the plaintiff are such as to appeal strongly to the conscience of a chancellor, and I am clearly of the opinion that he is entitled to the relief prayed for as against Evans and those claiming to be innocent purchasers of the lands in controversy. But much stress is laid on the fact that, after the sale of the lands under Evans' judgment, a demurrer was sustained to the bill filed by the plaintiff herein, with leave to amend, and that for that reason the claim of Evans is paramount and superior. If the bill in this case was sufficiently amended, after demurrer and leave to amend was given, to afford the plaintiff the relief he asks for, the amendment relates back to the institution of the suit, and neither Evans nor those holding under him can take anything by this objection or this contention. I have deemed it unnecessary to enter into any discussion as to the validity of the attachment proceedings instituted by Evans, because, with my views of the case, the plaintiff is entitled to the relief asked for, regardless of the invalidity of such proceedings. Let decree be entered as prayed for in the original and amended complaint.