## CITY OF BARNSDALL v. BARNSDALL NAT. BANK et al.

No. 21492.   Opinion Filed June 27, 1933.

Holcombe & Lohman and H. M. Curnutt, for plaintiff in error.

Hamilton, Gross & Howard, for defendants in error.

OSBORN, J.   This action was commenced in the district court of Osage county on December 29, 1927, by Barnsdall National Bank of Barnsdall, Okla., a corporation, T. E. Gibson, liquidating agent thereof, and T. E. Gibson, individually, John Javine, Jr., H. R. Little, and Mary E. Little, administratrix of the estate of G. R. Little, deceased, against the city of Barnsdall to recover on two separate causes of action united in the same petition, the sum of $3,007.50 in each action by reason of the following alleged state of facts:

In the year of 1919, the city of Barnsdall had issued bonds which bore six per cent. interest payable semi-annually on February 1st and August 1st of each year. Karl Hammer was city treasurer and at the same time was vice president and active managing officer of said bank. On January 29, 1923, Karl Hammer, without the knowledge of any of the other officers of said bank, drew a draft, without consideration, from the city of Barnsdall, in payment of the sum of $3,007.50, being the amount of the semi-annual interest due February 1, 1923, which transaction is embraced in the first cause of action.

On July 31, 1923, Karl Hammer, acting in said dual capacity, drew another draft without consideration against the funds of the bank in payment of the interest coupons on said bonds due August 1, 1923, and said transaction is the basis of the second cause of action of plaintiffs.

It is alleged that both of said transactions were wholly without knowledge on the part of any of the other officers of said bank, and that Karl Hammer designedly concealed said transactions from said officers; that thereafter a bank examiner discovered said transactions, together with other shortages and defalcations of the said Karl Hammer, and that the plaintiffs T. E. Gibson, John Javine, Jr., H. R. Little, and G. R. Little, who were the directors and stockholders of said bank, replaced said funds in the assets of said bank. The causes of action are predicated upon their right to recover same from the city of Barnsdall by reason of the above state of facts.

The bank went into voluntary liquidation

·'and said bank, together with its liquidating agent, are joined as plaintiffs.

'· The cause was tried before a jury, and resulted in a judgment in favor of plaintiffs .for the full amount sued for. The cause is brought to this court by petition in error and case-made.

The parties will be referred to as they appeared in the trial court.

· For reversal defendant asserts: (1) There is an improper joinder of several causes of action; (2) there is a defect of parties; (3) the petition fails to state a cause of action, in that (a) the facts stated constitute no liability against the municipality; (b) the facts are insufficient to establish the right of subrogation in the plaintiffs; (c) it appears from the face of the petition that the action is barred by the statute of limitations.

Other subsidiary questions are raised, in connection with the trial, all of which go either to the pleadings or to the facts.

Plaintiffs take the position that since they were required to make good the loss of money to the bank, they stand in the shoes of the bank; that since the bank's money was used to pay defendant's obligation to the coupon holders, the bank would be entitled to be subrogated to the rights of the coupon holders, and thereby would be entitled to maintain any action against defendant that the coupon holders could have maintained in the event the coupons were not paid, and that therefore plaintiffs are subrogated to .the rights of the coupon holders. In answer to this contention, defendant asserts that the bank is a mere volunteer and is not entitled to subrogation.

While the doctrine of subrogation is generally applied to cases of guaranty and suretyship, it has been extended to apply to cases where one has been compelled to pay the debt of another through the fraud of a third person. In the case of First Taxing District v. National Surety Co., 97 Conn. 639, 118 A. 96, 26 A. L. R. 297, it is said:

"A taxing district whose funds are misappropriated by its treasurer to make good his defalcation as administrator of a decedent's estate is entitled to subrogation to the rights of creditors and distributees of the estate, whose claims are settled by its funds, against the surety on the administration bond."

In the case of Reddington v. Franey, 131 Wis. 518, 111 N. W. 725, it is said:

"It is also held without substantial conflict of opinion that where a fund is misappropriated by an agent or trustee, without the owner's consent, to the payment of the debt of another, the owner of the fund is not a volunteer, but will be entitled to subrogation if necessary for his due protection.''

See, also, Newell v. Hadley, 206 Mass. 335, 92 N. E. 507, 29 L. R. A. (N. S.) 908; Cotton v. Dacey, 61 Fed. 481; Young v. Pecos County, 46 Tex. Civ. App. 319, 101 S. W. 1055; Pittsburgh-Westmoreland Coal Co. v. Kerr, 220 N. Y. 137, 115 N. E. 465.

While the above authorities are sufficient to establish the fact that plaintiffs are not precluded from a plea of subrogation on the ground of voluntary payment, yet they do not by any means establish plaintiffs' right to recovery herein.

It is recognized in all jurisdictions that subrogation is a creature of equity, and that all of the maxims of equity are applicable, so that plaintiffs must show that their equities herein are superior to the equities of defendant. 60 C. J. 708. In the case of Southwestern Surety Insurance Co. v. Farriss, 118 Okla. 188, 247 P. 392, it is said:

"A judgment whereby subrogation is awarded to sureties on a guardian's bond in one action, to be enforced against a subsequent anticipated recovery in another action, must, when the subsequent recovery is had, be shown to be then supported by equitable principles, and where it is clearly shown that the parties against whom the right of subrogation is sought to be enforced have equities equal to or superior to the equities of the subrogees, as well as legal rights which would be invaded by the enforcement of subrogation against them, equity will refuse relief against the legal right so strengthened by equal or superior equities."

In the case of Baker v. American Surety Company of New York, 181 Iowa, 634, 159 N. W. 1044, it is said:

"The doctrine of subrogation is always applied to promote justice and to prevent inequitable results, and will not be enforced when to do so would be inequitable or would work injustice to others having equal equities, so that the equities of one seeking subrogation must be greater than those of the one against whom subrogation is sought."

See, also, American Surety Company of New York v. Citizens' National Bank of Roswell, N. M., 294 Fed. 609; National Surety Co. v. Arosin, 198 Fed. 605, 117 C. C. A. 313; American Bonding Company of Baltimore v. State Savings Bank (Mont.) 133 P. 367, 46 L. R. A. (N. S.) 557.

In view of the state of the record herein, we are unable to weigh the equities existing between plaintiffs and defendant. The record fails to show whether or not an esti-

mate was made, and a tax levied and collected for the purpose of payment of the interest coupons, which were in fact paid by the funds of the bank. If the legal requirements in this connection had been met, and the funds were on hand, clearly, plaintiffs could establish an equitable right of subrogation on the principle of compelling payment by one who ought in equity and good conscience to pay it, in that equity seeks to prevent the unearned enrichment of one party at the expense of another, "by creating a relation somewhat analogous to a constructive trust in favor of a subrogee, or party making the payment, in all legal rights held by the creditor." 5 Pomeroy Eq. Jur. (4th Ed.) 2343.

If, on the other hand, said funds had been levied, collected, and embezzled by Karl Hammer, a different situation would prevail; the equities of the parties should be weighed, and this controversy would resolve itself into the question of which of two innocent parties must bear the loss occasioned by the fraud of Hammer. Under this assumption of fact, Hammer, the agent and trusted employee of the bank, having access to the funds of the bank, would have committed a breach of his trust to cover up a positive fraud against the defendant, which, in connection with an unexplained delay of more than four years in instituting an action, thereby lulling the defendant into inactivity during said period of time, would vest the defendant with equities greater than those of plaintiffs.

If the defendant had failed to make an estimate and had not levied and collected the taxes for payment of the interest coupons, there would be some merit in defendant's contention that "the city treasurer was without authority to bind the municipality in the manner charged," and the authorities cited in the brief on said proposition would be applicable. It is fundamental that a city officer is without authority to bind a city by the voluntary payment of a debt of the city, in the absence of a valid contract or agreement with the city, and unless said action came within the limitations imposed by the Constitution, and in pursuance of some statute authorizing such procedure.

While the doctrine of subrogation is based on broad equitable principles, yet it is limited in its application, and we believe the above discussion sufficiently expresses our view as to the extent of its application with relation to the facts as they may develop in a further hearing of this cause.

Defendant further contends that, since plaintiffs have failed to plead and prove that the municipality made the estimate and levied and collected a tax for the payment of said coupons, plaintiffs are bound by their pleadings, and this court must conclude that no estimate and levy were made and that the money was not provided or collected for the purpose of making payment of the coupons and that the payment thereof was a voluntary assumption of the city's obligation. Undoubtedly the burden is on the plaintiffs to establish their superior equities, but the assumption would be manifestly unfair to plaintiffs when the permanent records of the city should disclose the truth or falsity of such assumption. We are of the opinion that the pleadings could be amended so as to permit the introduction of this evidence, which is highly material to a proper determination of the issues presented herein.

The issue of the statute of limitations is also presented. Plaintiffs allege that the first draft was dated January 29, 1923; the second August 1, 1923; that the fraud was discovered November 8, 1923; and the petition was filed December 29, 1927, or about four years and two months after the discovery of the fraud. Defendant contends that the petition shows on its face that the action is barred by the statute of limitation of three years. Paragraph 2, section 101, O. S. 1931.

Plaintiffs contend that they are entitled to all the rights, remedies, and securities of the principal creditor and may maintain any action which the creditor could have maintained. As between these two positions the authorities are in hopeless conflict. The rule contended for by plaintiffs, however, has been adopted by this court. In the early case of McClure v. Johnson, 10 Okla. 663, 65 P. 103, it is said:

"In this territory, under the statute, as well as at common law, the right of action of the surety who has discharged the promissory note of his principal, is against the principal, upon the note, and not upon an implied promise to pay. A surety, who pays, is subrogated to all the rights of the holder of the note, one of which is the possession of the promissory note, and the right of action upon it against the principal, and he may pursue his remedy upon the note which he has paid, as against the principal, who is primarily liable, to the extent of reimbursing what he has expended."

This rule was approved in the case of Winans v. Hare, 46 Okla. 741, 148 P. 1052,

and in the later case of Pendergraft v. Phillips. 57 Okla. 105, 156 P. 1189.

The original obligation herein being a written contract and subject to the five-year limitation, the cause of action was not barred at the time of the filing of this suit. provided plaintiffs are able to establish in the first instance their right of subrogation.

Defendant contends that there is a misjoinder of causes of action. But if the plaintiffs succeed in establishing their right to be subrogated to the rights of the coupon holders, then the causes of action of plaintiffs will be based upon the contracts contained in the coupons. Under the second subdivision of section 199, O. S. 1931, there is no misjoinder of causes of action.

Defendant contends that there is a defect of parties in that the coupon holders are not made parties, since the plaintiffs are pleading a right to be subrogated to their interests. There is no merit in this contention. The coupon holders are asserting no rights, and have no interest herein that requires adjudication, nor is any prejudice to the rights of defendant shown by failure to join the coupon holders as parties herein.

While it might appear unnecessary to enter into a discussion of some of these matters at this time, it is anticipated that in so doing another appeal herein may be avoided.

The judgment is reversed and the cause remanded to the trial court, with directions to take further action in conformity with the views herein expressed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL. BAYLESS, and BUSBY. JJ.. concur. WELCH. J., absent.