Opinion of the court, by
Judge Burnet:
The plaintiff claims under a patent regularly granted by the United States, which covers the land in dispute. He must therefore recover, unless the defendants can show a ^better title in themselves, or that the plaintiff’s right is barred by some other cause.
*219 The facts oí this case are concisely these: In August, 1787, Thomas Boyer entered the land in controversy. In August, 1789, he withdrew two hundred acres of it. In November, 1793, the residue of his entry was surveyed: the word error, being written on the margin of *the record of the survey. On March 17, 1807, the whole of the residue of the entry was withdrawn, and the land virtually abandoned by Boyer. In April, 1805, Hemp-hill obtained a collector’s deed for the land, as having been sold for taxes, on which he entered; died in possession, in 1821, and was succeeded by the defendants, his heirs at law. On March 17, 1807, Holt’s entry was made, Hemphill being then in possession. This entry was soon after surveyed, and patented in 1809. Neither Holt nor his heirs, have at any time been actually seized of the premises, or any part of them. It also appears that Holt’s warrant had been entered and surveyed on other lands, and then withdrawn, before it was entered on the land in question.
The defendants contend:
First. That the legal title has passed to them by the collector’s deed.
Second. That after an entry has been surveyed, and recorded, the warrant is merged, so that the entry can not he withdrawn, or the warrant located on other land. From which they infer that Boyer’s location remains valid, and that Holt’s entry, survey, and patent, are void.
Third. That by the death of Hemphill in possession, a descent has been cast, which tabes from the lessors of the plaintiff their right of entry, and puts them to their real action.
First. It is very certain that the defense can not be supported on the first ground, as nothing has been shown to sustain the deed. It does not appear that the land was even listed, or that any tax was due and unpaid, or that it was advertised for sale, or that the person who signed the deed was authorized to collect the tax, and to sell the land in case of non-payment. Those facts are all necessary to support the deed; without them it can not be known that the land was liable to be sold; that the person who executed the deed had power to do so, or that the laws relating to' the *sale have been substantially followed by the agents concerned.
In deciding on tax titles, great strictness has always been observed and less latitude given than in proceedings on judgment *220 and execution. A collector who sells land for taxes must act in conformity with the law from which he derives his power; and the purchaser is bound to inquire whether he has done so or not. He buys at his peril, and can not sustain his title without showing the authority of the collector, and the regularity of the proceedings. In these cases, the maxim caveat emptor applies.
This doctrine is maintained in Stead’s Executors v. Course, 4 Cran. 412. It will also be found in 4 Bac. G41, where it is said that a title derived from a statute must pursue the statute strictly. For these reasons the collector’s deed can not be admitted as evidence of title.
Second. On the second ground, the defendants rely on the acts of Congress of March 2, 1807, and May 13, 1800, and on the land laws of Virginia, and the cases that have been decided under those laws. This branch of the case has been argued with great zeal and ingenuity by both sides, and has received from the court all the attention it seems to merit, in the estimation of the counsel.
The act of March 2, 1807, was intended to quiet titles,.and prevent litigation in the Virginia military district. It does not seem to regard, or affect any pre-existing right of withdrawal. It guards the survey claimed by a locator against a subsequent entry by another locator. Any right of withdrawal that might have existed, prior to the passing of that act, is not taken away by it. It was not intended to restrain persons from abandoning their land, whether surveyed or not, but to protect them after survey, from disturbance by third persons who might attempt to locate the same land. In short, the great object of the proviso was to save defective locations, after patent, or survey, and in that point of view it may be regarded as one of the most salutary provisions contained in the statutes relating to these lands.
The act of May 13,1800, does not appear to affect the case. The second section, which has been referred to, contains no prohibition. It merely gives the right of relocating *a warrant, after eviction, which could not be done by the laws then in force in cases where the eviction happened, aftor the location had been carried into grant.
Without settling in what cases a warrant might be withdrawn and relocated by previous laws, it declares, in general terms, that after eviction it may be relocated in every case; that is, as I under *221 stand it, whether the claim which has been lost stood on entry, survey, or patent.
It is contended that as this act gives the right of withdrawing and relocating after an eviction, and in no other case, it must be evident that Congress did not intend to give the right, and therefore have excluded it in the ease before us, because no eviction has taken place. But this mode of reasoning will carry us further than counsel are willing to go; for if a fair interpretation of the act excludes a surveyed entry where there has been no eviction, it must exclude a naked entry under the same circumstances, for it makes no distinction.
The statute of Virginia of May, 1779, referred to in the argument, is not very explicit. The prohibition which it is said to contain is rather inferable than direct. Warrants are declared to be good and valid till executed by survey, after which, it is contended, they merge, and become functus officio. This construction seems reasonable, and has been given by the courts of Kentucky, as appears from the case of Withers v. Tyler, 4 Marsh. 173, where it was decided that a survey made and recorded by proper authority, was an extinguishment of the warrant. The same principle was held in Taylor v. Anderson, 3 Marsh. 501. The case of Taylor’s Lessee v. Myers, 7 Wheat. 23, so much relied on by plaintiff’s counsel, does not seem to clash with the 'case of Withers v. Tyler. The principle settled by the Supreme Court in that case is, that a locator can not be compelled to consummate a title once begun; he may forfeit it, or abandon it, provided he does not thereby affect the rights of others. The question, whether a warrant had been entered and surveyed could, after a withdrawal, be entered and surveyed elsewhere, was not presented.
The case settles the right of Boyer to relinquish his location, as far as his own interest was concerned; but it does not decide the point whether Holt’s second location, on the *land in question, was valid or not. But whatever may be the construction of the statutes referred to as to the parties themselves, I do not hesitate to say that after the survey of an entry has been recorded, it is not in the power of the claimant to destroy the tax lien of the state, or to avoid the effect of a sale, regularly made by the collector, for the non-payment of taxes.
It may, with some plausibility be said, that as the warrants were withdrawn, and the lands first located, restored to the corn *222 mon mass of vacant territory, no injury has been done to government, and but little, if any, to the holders of unlocated warrants.
The course pursued by these parties will not eventually give them more land than they áre legally entitled to; so that the principal objection, apart from that which the land laws are supposed to present, is as to the right of a second choice, or the exchange of land once selected for other land of a better quality. Should this be permitted, it would not operate fraudulently on the government, nor could it strictly be said to be a fraud on other warrant holders, as would be the fact if they were now claiming their first locations, and thus attempting to secure more land than their warrants called for. Under such circumstances I should consider the second entries as unauthorized by the land laws of Virginia, and a direct fraud on the government and the holders of unsatisfied warrants. But it is admitted by the agreed case that both parties have abandoned their first locations, so that the main objection depends on a question stricti juris — a technical construction of the statute law on the subject. It is the opinion of the court, however, that the rights of these parties maybe ascertained and settled, as far as they are necessarily involved in this controversy, on grounds which do not impose the necessity of giving an interpretation to the land laws as to the validity of a new entry, after the withdrawal or abandonment of a prior surveyed entry on the same warrant.
If the heirs of Boyer were contesting the validity of the withdrawal of these warrants, or if the defendants had connected themselves with Boyer’s title, either by purchase from him or under the tax laws of the state, the case would wear a different aspect, but as it now stands they must be ^considered as intruders. They can .not be allowed to question the validity of the plaintiff’s patent, and this furnishes all the answer that is necessary to so much of the argument as relates to the illegality of the withdrawal, and the necessity of proving that if legal, it was made on sufficient authority.
Third. In considering the third and last ground taken by the defendant, it will be proper to bear in mind, that Hemphill entered in 18.05, on a claim of title under a collector’s deed; that Holt’s location was not made till 1807; that he never had an actual seizin of any part of the premises, but that they have been constantly held by an adverse seizin, under claim of title. On these facts, the *223 question is made, whether by the descent cast on the heirs of Hemphill, at his death, the entry of Holt’s heirs is tolled.
It is a well-known principle of the common law that if a person seized of the inheritance of a corporeal hereditament dies, by which it descends to his heir, the right of entry is tolled by the descent, which is cast on the heir, and the claimant, for his neglect to enter on the ancestor, who knew his title better than the heir who came to the estate, by act of law, is put to the remedy of an action against the heir. It is laid down by Blackstone as a general rule, that no man can recover possession, by mere entry on lands which another hath by descent. But to this rule there are exceptions; as whore the claimant has been under some disability, as infancy, coverture, and the like, or where the tolling of the entry would leave the claimant without any remedy whatever, which I apprehend would be the fact, in the case before us. By the rules of pleading in real actions, the demandant must allege in his count, that he or his ancestors were seized, and took the esplees, or products of the land. The facts of the ease show that neither Holt nor his heirs could support these material averments of the count in a real action. They could not, therefore, sustain such an action. The patent connected with the facts of the agreed case, gives them only a title of entry, and having but a title to enter, and no remedy by action real, the descent does not toll the entry, for if it did, the law would bar their right, by leaving them without any remedy. Co. Lit. 240, a, n. It has been alleged by one of the counsel for the defendants, that the case of Green v. Liter, 3 Cran. 244, establishes a different ^doctrine; but it does not appear so to me. The court say, in that case, that an actual seizin, or seizin in deed, is necessary to maintain a writ of right; but that such a seizin may, in some cases, be proved without showing an actual entry under title, and perception of the esplees. This is perfectly consistent with the course of decision which has prevailed in this court.' We have always held that a complete title may be created without an actual entry, and where the grantee may never have been within hundreds of miles of the property granted. The delivery of the deed has been considered as giving possession in contemplation of law, and the grantee is presumed to have entered, unless that presumption is rebutted by facts, wholly inconsistent with it, as when the premises, at the time of the grant, are in the actual seizin of a third person claiming title adverse to *224 the grantor. In such a case, it would be a contradiction in terms, to say that the grantee has a constructive seizin in deed; nor do I discover anything in the case of Green v. Liter, from which it can be inferred that a constructive seizin is to bo presumed under such circumstances. The most that can be said, is, that the grantee has a title to enter, on which he may maintain an ejectment. It seems unreasonable to say that he has such a seizin in deed as is required to support a real action.
The principal points decided by Judge Story are, that there maybe a constructive seizin in deed, without an actual entry, and that when such a seizin has been proved, the perception of the esplees follows, as a necessary inference of law. But I do not discover, from any of the cases put by the learned judge, by way oi illustration that such a seizin in deed, as he speaks of, can be presumed, where the grantee has never entered on any part of the premises, and where the whole tract granted, is in the actual possession of an adverse claimant, holding under a claim of title. These being the facts of the case we are now deciding, I conclude that it is not affected by the case of Green v. Liter, as has been supposed. The doctrine there laid down is safe and salutary; and the reasons assigned, in support of it, are peculiarly applicable to this state, on account of the large quantity of waste and unsettled land which it contains, and the multitude of sales that are made of such Hand. On these occasions, it would be a burdensome and useless toil, to require the parties to repair to the premises, which may cost them a journey of several days into a wilderness, either for the actual performance of a ceremony, long since obsolete, or to lay the foundation of a legal presumption that it has been performed. And that I may not be misunderstood on this important point, I repeat that I do not consider a formal livery of seizin, as practiced in former times, or an actual corporeal entry, as being at all necessary to consummate a title, or to vest a seizin in deed, in any case, where the premises are vacant, or occupied by a person holding under the grants., or otherwise without claim of title. In all such cases, the execution and delivery of the deed vests the seizin, completes the title, and puts the grantee in the same situation, as if he had made a formal entry, and received the twig and turf from the hand of the grantor. But in this case, if Holt, or his heirs, had been actually, as well as legally seized, and had taken the esplees of the land, which would *225 entitle them to their real action; and if a descent had been cast under those circumstances, although at common law, it might toll their entry, and bar an ejectment, yet, I apprehend, it would not have that effect in this state.
I do not now recollect any adjudication in the courts of Ohio, in which it has been decided, in what description of cases, lands and tenements may be recovered by the action of ejectment; but from the practice which has prevailed since the passing of the limitation act of 1804, it would seem that the action of ejectment has been considered as a proper remedy for the recovery of real property, under all circumstances. Although neither that act, nor those which have since been passed, can be considered as prohibiting real actions; yet there is reason to conclude, and such appears to have been the prevailing opinion, that by a fair interpretation of those acts, the writ of ejectment may be used in all cases in which the writ of right can be sustained at common law.
I shall not, at this time, attempt an analysis of those statutes to ascertain their construction, but will pnly suggest, that they mention no form of action for the recovery of real estate, but the ejectment; that they give but one period of limitation to such actions, and that the ejectment is so connected with the substance of the provision, as to apply ^equally to the recovery of possession, title, or claim to land. The inference is, that by our present practice an ejectment may be resorted to for all the purposes of a real action, and may be sustained either on aright of entry, or a title to enter, and that the casting of a descent, would be no bar in this case, should it be admitted that the facts in evidence do not take it out of the rule by which an entry is tolled.
It may be proper, further to observe, that the patent is an appropriation of the land, and vests a legal title, and that the defendants having failed to support the collector’s deed, can not, in this form of action, avail themselves of any equity that may be supposed to exist in their favor. Cases may be found in which patents have been impeached at law, for causes existing before they were issued ; but this is not one of that character, nor does it come within the class of cases in which patents have been held void at law, for having issued without authority, or against the provisions oí a statute.
The defendants’ counsel, aware that their defense would be subject to this objection, have cited several authorities to show that *226 their case may be considered as an exception; but the authorities do not sustain them. It is a plain case of an attempt to evade a legal title, by an alleged equity.